WILLIAM WALKLEY, Administrator, &c., of James Walkley, deceased, v. EVAN GRIFFITH and wife.

Where the defendant, as agent, had collected moneys belonging to a deceased intestate or to his estate, and the administrator being applied to by a creditor for the payment of a bill against the deceased, sent the creditor to the defendant for payment; *held*, that this constituted a sufficient authority to the defendant to apply the moneys collected to the payment of the creditor.

And in an action by the administrator against the defendant to recover the moneys collected; *held*, that the defendant should be allowed to set off the amount paid to the creditor, as so much expended by the authority of the plaintiff, and for his use.

*It seems*, that the next of kin of the decedent is not a party for whose immediate benefit such an action is prosecuted, so as to be incompetent as a witness, within the meaning of § 399 of the Code, before the amendment of April 13, 1857.

THE plaintiff was the administrator of the estate of a deceased person, and instituted this action to recover $500 for money alleged to be held by the defendant, Mrs. Griffith, one of the next of kin. The answer set up the payment of money on account of the estate, and the rendition of certain services

therefor. The case, in this court, turned upon the question of the validity of the first branch of the defence, the facts relating to which are detailed in the opinion.

The plaintiff recovered judgment in the Marine Court, and the defendants now ask a reversal.

*William P. Lee*, for the defendants.

*Addison S. Diossy*, for the plaintiff.

BY THE COURT. WOODRUFF, J.—The evidence in this cause appears to me to show, without conflict or contradiction, that the plaintiff's intestate, James Walkley, died on the 4th of August, 1854; that the defendant had collected the rents of certain premises belonging to the intestate, and which accrued before his death, viz., from May 1st, 1853, to 1st of August, 1854, amounting to $269. Whether the actual collection took place before the decease of James Walkley, or after his death, does not distinctly appear; but it is not very material, since, as the rent accrued before his decease, the indebtedness therefor—whether by the tenants or by the defendants—belonged to this administrator as assets.

It further appeared that the intestate had, during the summer before his death, employed the witness, Adams, and his partner, to perform some plumbing work upon some five or six buildings in 49th street, amounting—exclusive of certain water rents, paid by request of Mrs. Griffith—to $322 21. These buildings, it was shown, belonged to the intestate, and whether he had conveyed them to his children—the plaintiff, Mrs. Griffith, &c.—at the time he employed the plumber, does not appear; but whether he had or not, he was liable for this plumbing, and the plaintiff, as his administrator, was liable therefor.

Under these circumstances, the plaintiff being applied to for payment of the bill, sent the plumber to Mrs. Griffith for the money, at the same time distinctly recognizing the liability of the estate by stating that the intestate authorized him

—the plaintiff himself—to employ the plumber. Indeed, such employment by the intestate is one of the distinct admissions of the plaintiff's counsel on the trial.

Admitting the liability of the estate in this manner, a sending the plumber to Mrs. Griffith for the money was, in my judgment, a clear authority to her to appropriate the moneys she had collected to the payment of the bill, and made the plaintiff liable, either in his own right or as administrator, for the excess of the payment over and above the amount in her hands, as so much money paid for him and by his request. This result seems to me also eminently just and equitable in its operation as among the next of kin. It is the application of the money of the estate to the payment of a debt of the intestate, while to require the defendant to bear the payment herself, is to do her injustice as between herself and her brother. Whether the payment of this claim for plumbing in full would be allowed to the plaintiff in the settlement of his accounts, if the estate proved insolvent, is is not necessary to consider here. An administrator may pay a debt in full, at his own peril, if he please, and if the assets are insufficient to pay the other creditors in full, he will only bear the consequence of his own voluntary act, if he is required to make good the overplus paid to the one who is paid in full.

I, therefore, can discover no ground upon which the judgment can be substantiated.

The question, whether the next of kin of the deceased were competent witnesses, is one of no little embarassment. They are plainly interested, but so long, at least, as it does not appear whether the estate is solvent or insolvent, it is by no means apparent that a recovery by the plaintiff will produce any benefit to them; and in any case we are inclined to follow the views which have heretofore governed us on this subject, that where the recovery is not to go into the hands of the witness and he cannot control the judgment, but his interest therein depends upon a contingency, and to be reached through a secondary liability, depending upon the course of administration and its ultimate result, we cannot say the next

is prosecuted for his "immediate benefit." (See *Bean* v. *Canning*, 2 E. D. Smith, 419.)

But upon the other ground, I think the judgment must be reversed.

It is hardly necessary to add, that upon the proof, the claim of the defendants to commissions was abundantly satisfied, by the use and occupation of the premises enjoyed by them.

Judgment reversed, with costs.